BENEDICT & BURNHAM MANUF'G CO. *v.* HOLLISTER.

*(Circuit Court, D. Connecticut.  ———, 1880.)*

PATENT—INFRINGEMENT.—Letters patent issued to Edward A. Locke on August 2, 1869, for an improved revenue stamp for barrels, sustained.

*Stephen W. Kellogg* and *John S. Beach,* for plaintiff.
*Calvin G. Childs,* U. S. Dist. Att'y, for defendant.

SHIPMAN, D. J.    This is a bill in equity to restrain the defendant from the alleged infringement of letters patent for an improved revenue stamp for barrels. The patent was issued to Edward A. Locke on August 2, 1869, and was assigned to the plaintiff on November 10, 1875.    Prior to and at the date of the Locke invention the internal revenue stamp which was used by the United States government upon packages of distilled spirits, and which was called the "tax-paid stamp," was constructed of two pieces of paper.    Before the stamp was printed the paper of which the body of the stamp was composed was perforated with a round aperture, about one and a half inches in diameter.    To the back of the paper was then attached, by paste or mucilage, a piece of tissue paper, completely covering said aperture.    The stamp was then printed, the engraving covering both the body of the paper and so much of the tissue paper as appears through the aperture.

One object of Locke was to make a revenue barrel stamp which should be so destroyed by the removal of a part thereof that the stamp could not be subsequently fraudulently used, and that the removed part should also permanently contain and exhibit such identifying marks that the facts that the tax had been paid upon the contents of the barrel to which the stamp had been affixed, and that it had been destroyed, should always appear.    The principle of Locke's invention was to construct the stamp so that a part, upon which was impressed identifying marks corresponding with similar marks upon the stub, and which was such a well-known part that its removal would destroy the stamp, could, after the stamp had been detached from the stub and had been affixed to a package,

be removed from the rest of the stamp and from the barrel, and could be preserved by the revenue officer.

The portion of the Locke device which is claimed to have been infringed, was constructed as follows: A piece of thin metal was impressed with letters or figures corresponding with the letters or figures upon the stub of the stamp. This piece, made of any appropriate form, was inserted in an aperture in the face of the stamp, and was retained in its place by a "backing piece" of paper, the two pieces of paper being gummed together for this purpose. This backing piece was prepared with dried gum on its outer face, so that the stamp was ready for instant application to the cask. In the specification the patentee further says: "Instead of making the removable piece out of metal, or of making it in a piece separate from the stamp, it may be made of the same piece of paper of which the stamp is composed by simply having its outline perforated, after the manner of postage stamps, but ungummed at its back, so as readily to be torn away and detached from the stamp."

If the stamp was constructed according to the latter method, it would be a stamp made of one piece of paper, with identifying marks upon a portion of its surface corresponding with similar marks upon the stub; said portion being so constructed that it can easily be detached from the residue of the stamp after the whole stamp has been detached from the stub and has been affixed to the barrel. Although the patentee speaks of a backing piece of paper which retained the metal slip in its place, and was to be gummed so as to adhere to the barrel, he does not mention this backing piece in connection with the stamp when made entirely of paper. Probably the fair construction of the specification is that the stamp is always to be provided with a backing piece. In deciding the case, however, I prefer to assume that the patentee supposed that the dried gum was needed only upon the back of that portion of the stamp which was not to be torn away.

The first claim, and the only one which is said to have been infringed, is for "a stamp, the body of which is made of paper

or other suitable material, and having a removable slip of metal or other material, displaying thereon a serial number or other specific identifying mark corresponding with a similar mark upon the stub, and so attached that the removal of such slip must mutilate or destroy the stamp." The stamps which were sold and used prior to the date of this bill and since the date of said letters patent, by the defendant, as a collector of internal revenue in the state of Connecticut, and which were furnished to him by the commissioner of internal revenue for the purpose of being affixed to packages of distilled spirits to denote the payment of tax thereon, are made as follows: The body of the stamp is composed of a piece of paper of one thickness, upon which is impressed the printed matter of the stamp. A strip of blank paper is attached to the outside edges of the back of the body of the stamp. This strip is about one-third of the length of the body of the stamp, and is of the same width. When the stamp is to be used it is placed upon that part of the head of a barrel which has been previously covered with paste, is secured to the barrel by tacks, is varnished, and cancelled by a stencil plate. When the barrel goes from the distiller or owner to the rectifier, the portion over the blank strip, and which is not attached to the barrel in consequence of the intervention of the strip, is cut out and is preserved by the revenue officer. This portion has upon its face identifying marks corresponding with similar marks upon the stub. It is cut out so that the evidence that the tax upon the contents of the barrel has been paid may be preserved, and so that the stamp may be effectually destroyed and be rendered incapable of subsequent use upon another package. This kind of stamp has been used by the internal revenue bureau since January, 1876, and has been an efficacious preventive of fraud. The stamps previously in use did not accomplish this most important result.

The principal question in the case is that of infringement. The objects of the two devices are the same. Upon a narrow construction of the specification and claim, the plaintiff's stamp is of a single thickness of paper gummed upon the back, except as to the part which is to be torn or cut out.

The defendant's stamp is of a single thickness of paper not gummed upon the back, but with a blank strip protecting the portions to be cut out from the paste upon the barrel. The blank strip was described in the plaintiff's specification. The difference is that in the use of the plaintiff's stamp the adhesive material is applied to the back of the stamp, while in the use of the defendant's stamp the adhesive material is applied to the head of the barrel. The method of construction of the two stamps is substantially the same, even assuming that the "backing piece" was not intended to be used when the entire stamp is composed of one piece of paper.

An attempt was made to attack the Locke patent for want of novelty, but the two antedating patents which were somewhat feebly relied upon by the defendant, viz., the English patent of Edward Wilkins, dated November 13, 1851, and the patent of Albon Man, dated September 3, 1867, refer to devices so manifestly unlike the Locke stamp that further examination is unnecessary.

The utility and patentability of the Locke stamp cannot be controverted, in view of the testimony which was introduced by the defendant respecting the various devices which the government had used, and the great success of the device which was finally adopted.

Let a decree be entered for the plaintiff directing an account and an injunction—the terms of the decree as to injunction to be settled upon hearing.